PERK, AUDITOR, *v.* BOARD OF REVISION OF CUYAHOGA COUNTY ET AL.

[Cite as Perk v. Bd. of Revision (1971), 29 Ohio Misc. 1.]

(No. 894589—Decided July 27, 1971.)

Common Pleas Court of Cuyahoga County.

*Mr. J. William Petro* and *Mr. William J. Zangerle,* for plaintiff.
*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. John L. Dowling,* for defendants.

McMonagle, J. In this action plaintiff seeks a determination and declaration by the court as to the rights and obligations of the county auditor with reference to his duties as secretary of the Cuyahoga County Board of Revision. He claims that as secretary of the board he has maintained employees and office space in the county administration building ever since he was elected; he and his staff have done all of the secretarial, administrative and clerical work—all of the office work of the board; that the board of county commissioners has provided the necessary space and operating funds for him to staff and perform his duties as such secretary; that he is charged by law with the performance of these duties; that on April 21, 1971, the majority of the members of the county board of revision, namely defendants Frank R. Pokorny and Frank M. Brennan, voted; to divest him of the functions and duties of his office; to appoint an expert-administrator to serve the board of revision with the understanding that he would act as administrator for the purpose of submitting complaints to the board of revision and the various hearing boards and act in an advisory and supervisory capacity over all the employees concerned with the work of the board of revision; that since said April 21st meeting, the said defendants have interfered with the plaintiff and with his employees who have been designated by him to assist in the performance of his duties as secretary of the board; have requested his deputies to resign and be reappointed as employees of the board; that the expert-administrator has interfered with the employees of the county auditor in the performance of their duties with the work of the board, and with the plaintiff in the performance of his duties as secretary of the board and in his work as the county auditor.

Plaintiff further claims that the appointment of said expert-administrator and the duties assigned to him are in conflict with the statutory duties of the plaintiff as secretary of the board; that at said meeting of April 21, 1971, said defendant members voted to transfer funds previously budgeted by the county commissioners to the county audi-

tor in his 1971 budget to an autonomous account of the county board of revision and, also, at said meeting said defendants voted to hire employees to perform duties of the secretary of the board of revision which had been performed by the county auditor's employees in connection with functions of the board; that the board of county commissioners are contemplating transfer of funds from the budget of the county auditor so that he will be unable to pay his employees who are performing the office tasks of the board.

The basic prayer of the complaint is a request that the court determine and declare:

(1) That the county board of revision is not authorized by statute to employ an expert-administrator;

(2) That the plaintiff as secretary of the county board of revision has authority to perform all administrative functions of the county board of revision;

(3) That the rights and duties of the county board of revision with reference to the administrative functions to be performed in connection with the primary work of the board of revision be specified by the court; and

(4) That injunctive orders be entered to carry the findings of the court into effect.

The defendants filed an answer and counterclaim in which it is admitted that the auditor's employees had done the administrative work of the board of revision for many years; that the majority members of the board did appoint an expert-administrator as reflected by the minutes of April 21, 1971, but aver they were authorized to make such appointment by a journal entry of the board of tax appeals; and defendants further admit that a budget allocation was made to the board of revision but deny that it was made to the county auditor for maintaining employees in the board of revision.

The counterclaim of the defendants in substance alleges interference by the plaintiff with the work of the expert-administrator appointed by the board of revision; that the plaintiff usurped an office for his exclusive use without authority of the board of county commissioners;

that the plaintiff stated that he would not issue warrants as county auditor to pay the persons designated by the action of the majority members of the board of revision to perform board of revision work.

The defendants ask that the complaint of the plaintiff be dismissed and that the plaintiff be enjoined from interfering with the expert, clerks, and employees hired by the board.

The matter was submitted to the court on a transcript of proceedings on motions for preliminary injunctions which had been previously heard in Court Room No. 1, and the exhibits that were offered and admitted into evidence at that hearing.

At the time of the trial hereof both counsel advised the court that the said defendants were joining with the plaintiff in asking for declarations in the respects previously set out herein.

The plaintiff described the work he had been performing as secretary of the board of revision.

R. 6.—"Q. Mr. Perk, I hand you what has been marked in this Courtroom as Plaintiff's Exhibit 1, is that the book in which you keep the minutes of the board of revision meetings?

"A. Yes, it is.

"Q. How are these minutes prepared and put into that book?

"A. Well, as I said before, I take notes and then from those notes I prepare an accounting of what transpired at the board of revision meeting and then my employees type this account that I prepare and then it is placed in the journal book.

"Q. I think you mentioned before you had other functions as secretary; what are some of these functions?

"A. I supervise the filing and the processing of complaints which includes the indexing and the numbering of these complaints and preparing the files for each complaint.

"I docket the cases that are to be heard by the reviewing boards. I also set up the cases to be heard for oral

hearings. I send out the notices for the oral hearings and keep accurate records of the proceedings of the various hearings and then place those proceedings in minute form and place them in the book.

"I send out decision letters to those persons involved in the decisions and keep an accurate record of these proceedings placing them in index books and prepare cases or prepare the files for cases that may be on appeal to the board of tax appeals in Columbus or to the Common Pleas Court.

"Basically I perform all of those functions which are necessary to the smooth administration of the board of revision.

"Q. Mr. Perk, do you perform all these functions in person?

"A. No, I hire employees to assist me in the performance of these duties as secretary of the board of revision."

It is not disputed that prior to April 21, 1971, the plaintiff, and his predecessors in office, through duly qualified deputy county auditors performed all of the secretarial, administrative, clerical and office work of every nature required for the functioning of the board of revision.

Funds for the payment of these deputies, and for necessary board of revision office expenses, had, for the year 1971 and for many prior years, been included in the budget of the county auditor by the board of county commissioners and allocated to the board of revision. (See Cuyahoga County Budget—Defendant's Exhibit C.)

Simply stated, the questions which the court is called upon to decide are the following:

(1) Did the Legislature through its statutory enactments contemplate and expect that each of the county auditors in the state of Ohio, as secretary of the board of revision, would perform all of the board of revision secretarial, administrative, clerical and office work?

(2) Did the Legislature anticipate that only part of such so-called office work would be performed by the auditor and part performed by clerks directly employed by the board of revision?

(3). Did the Legislature contemplate that the county auditor was to do none of this so-called office work and that all of it would be performed by clerks employed by the board of revision?

The controversy here is somewhat in the nature of a jurisdictional dispute which we occasionally see in different phases of industry. The taxpayers of Cuyahoga County must foot the bill for the work in controversy regardless of what county official or body includes the expenses in his budget.

Because of some very specific statutory provisions the answer to question No. (3) is "No." The court understands that this is conceded by the defendants. Answers to the other two questions must be arrived at from a review of the applicable law.

Since this action is chiefly concerned with the duties of the county auditor as secretary of the board of revision, a review of the various applicable statutes with reference thereto is necessary to determine the issues herein presented. The applicable chapter is R. C. 5715.

"R. C. 5715.01 Assessment of real property; board of revision. [In part]

"The Board of Tax Appeals shall direct and supervise the assessment for taxation of all real property * * * County auditors shall, under the direction and supervision of the board, be the chief assessing officers of their respective counties, and shall list and value the real property within their respective counties for taxation in accordance with this section and R. C. 5713.03, and with such rules of the board of tax appeals. There shall also be a board in each county, known as the county board of revision, which shall hear complaints and revise assessments of real property for taxation. * * *"

"R. C. 5715.02 County board of revision; or boards; quorum; power to administer oaths.

"The county treasurer, county auditor, and the president of the board of county commissioners shall constitute the county board of revision, or they may provide for one or more hearing boards when they deem the creation of such to be necessary to the expeditious hearing of valuation

complaints. Each such official may appoint one qualified employee from his office to serve in his place and stead on each such board for the purpose of hearing complaints as to the value of real property only. Each such hearing board has the same authority to hear and decide complaints and sign the journal as the board of revision, and shall proceed in the manner provided for the board of revision by R. C. 5715.08 to 5715.20, inclusive. Any decision by a hearing board shall be the decision of the board of revision.

"A majority of a county board of revision or hearing board shall constitute a quorum to hear and determine any complaint, and any vacancy shall not impair the right of the remaining members of such board, whether elected officials or appointees, to exercise all the powers thereof so long as a majority remains.

"Each member of a county board of revision or hearing board may administer oaths."

"R. C. 5715.03 Payment of compensation and expenses. [In part]

"The compensation of the experts, clerks, and other employees of the county boards of revision shall be paid monthly upon the certificate of the county auditor or board. The contingent expenses of the auditor and board, including postage and express charges, * * * necessary traveling expenses, * * * when required by orders issued by the department of taxation, shall be allowed and paid as are other claims against the county."

"R. C. 5715.04 Office hours; conditions of employment. [In part]

"County boards of revision shall, during the time fixed for their sessions, keep their offices open during the business hours * * * and their experts, clerks, * * * shall devote their entire time to their respective duties * * * provided that boards may, with the approval of the board of tax appeals, employ experts, clerks, or other employees with the understanding that such employed persons shall devote only a part of their entire time to their respective employments."

"R. C. 5715.05 Offices; equipment and supplies.

"The board of county commissioners shall furnish to the county board of revision and its experts, clerks, and employees suitable office rooms at the county seat, and shall furnish the county auditor for his own office and the county board of revision all maps, plats, stationery, blank forms, books, supplies, furniture, and other equipment necessary for the proper discharge of their duties and the preservation of their books, records, and files. The maps, plats, stationery, blank forms, and other supplies and equipment used by the auditor shall, so far as practicable, be used also by the county board of revision.''

"R. C. 5715.06 Number of experts; compensation; civil service. [In part]

"Each county board of revision shall appoint the number of experts, clerks, and employees that is prescribed for it by the board of tax appeals. Such experts, clerks, and employees shall hold their employment for the time that is prescribed by the board of tax appeals. The compensation * * * shall be fixed by the board of county commissioners.

"No expert, * * * shall be subject to any civil service law or regulation.''

"R. C. 5715.07 Public inspection of documents relating to assessments. [In part]

"All files, * * * relating to the assessment of real property which are in the office of a county auditor or county board of revision or in the official custody or possession of such office or board shall be open to public inspection.''

"R. C. 5715.08 Minutes of meetings; preservation of minutes and evidence. [In part]

"The county board of revision shall take full minutes of all evidence given before the board, * * * The secretary of the board shall preserve in his office separate records of all minutes and documentary evidence offered on each complaint.''

"R. C. 5715.09 Organization of county board of revision, meetings; record.

"Each county board of revision shall organize annually on the second Monday in January by the election of a

chairman for the ensuing year. The county auditor shall be the secretary of the board. He shall call the board together as often as necessary during any year, keep an accurate record of the proceedings of the board in a book kept for the purpose, and perform such other duties as are incidental to the position.''

"R. C. 5715.12 Duty to give notice before increasing valuation; service. [In part]

"The county board of revision shall not increase any valuation without giving notice to the person in whose name the property affected thereby is listed and affording him an opportunity to be heard. * * * such notice shall be served by delivering a copy thereof to the person interested, * * * or by sending the same by registered letter. * * *''

"R. C. 5715.14 Action certified to auditor; correction of tax lists. [In part]

"The county board of revision shall certify its action to the county auditor, who shall correct the tax list. * * *''

"R. C. 5715.16 Corrections in assessments. [In part]

"On the second Monday of June, annually, the county auditor shall lay before the county board of revision the returns of his assessment of real property for the current year, and such board shall forthwith proceed to revise the assessment and returns of such real property. If the board finds that any tract, * * * have been improperly listed * * * it shall make the necessary corrections and give to each such * * * tract, * * * their corrected taxable value.

"The auditor shall not make up his tax list and duplicate nor advertise as provided in R. C. 5715.17 until the board has completed its work under this section and returned to the auditor all the returns laid before it with the revisions thereof.''

"R. C. 5715.17 Notice that work of equalization completed; county auditor to furnish certificates; notice to board of education. [In part]

"When the county board of revision has completed its work of equalization * * * the county auditor shall give notice * * * that the tax returns for the current year have

been revised * * * and that complaints against any valuation or assessment * * * will be heard by the board, stating in the notice the time and place of the meeting of such board. * * *''

"R. C. 5715.19 Complaints; determination of complaints; tender of tax; determination of common level of assessment. [In part]

"A complaint against any valuation or assessment * * * may be filed on or before the time limited for payment of taxes for the first half. * * * The county auditor shall present to the county board of revision all complaints filed with him, and each board shall notify any such complainant * * * by registered or certified mail, * * * of the time and place the same will be heard, and shall hear and render its decision on such complaint within ninety days after the filing thereof with the said board."

The state of Ohio, which is vested with sovereign taxing power, has, by legislation, designated the public officials, departments and agencies that shall administer the taxing laws. It has granted rule-making, directory and supervisory authority to specific officials subject, of course, to constitutional and legislative limitations.

The function of a board of revision is to "hear complaints and revise assessments of real property for taxation." (R. C. 5715.01.) Such work includes equalization of assessments. (R. C. 5715.17.) Its duties are essentially those of a quasi-judicial tribunal. (See *The Swetland Company* v. *Evatt, Tax Commissioner*; and *Park Investment Company* v. *Evatt, Tax Commissioners*, 139 Ohio St. 6.) The board consists of three elected county officials. (R. C. 5715.02.)

In *State, ex rel. Godfrey,* v. *O'Brien, Treasurer, et al.*, 95 Ohio St. 166, the Supreme Court held unconstitutional an act that provided for the establishment of county boards of revision consisting of non-elected members and specified limitations as to the delegation of powers and duties involving boards of revision. Syllabuses (1) and (2) read as follows:

"1. County and township subdivisions are agencies

of the state, and constituent parts of the plan of permanent organization of state government.

"2. Where the state seeks to exercise its sovereign power through the agencies of county or township officers, the statute creating the office and providing for the selection and compensation of the incumbent, must conform to the constitutional provisions with reference to such officers."

Except for the auditor, no material statutory duties are imposed upon the members of the board other than to "hear complaints and revise assessments" and keep their offices open "during the time fixed for their sessions," "take minutes of all evidence given before the board" and certify its action to the county auditor.

The county auditor is required by legislation and rules of the board of tax appeals to list, value and assess each parcel of real property in his county and to establish and maintain under his control and supervision its permanent real property tax records, all of which shall be open for inspection (R. C. 5715.07) and be made available for the use of public officials and bodies in connection with proceedings in which they may be involved.

The specific requirements which the auditor is required to perform as to each plat is contained in Board of Tax Appeals (BTA) rules. These require that such records be completed and "in his possession and open to the inspection of any interested person" before the county auditor "lay[s] before the county board of revision the returns of his assessment of real property" in accordance with the provisions of R. C. 5715.16.

"BTA-5-02 (Rule 101). *Appraisals.*—Each lot, tract, or parcel of land, and all buildings, structures, fixtures, and improvements to land shall be appraised by the county auditor according to true value in money, as it or they existed on tax lien date of the year in which the property is appraised."

"BTA-5-04 (Rule 103.) *Adoption and Use of Property Records.*—Each county auditor shall adopt a system of currently maintained property records for each lot,

tract, or parcel of real property in the county of his jurisdiction as provided in R. C. 5713.03. Such property records shall be in either sheet or card form as determined by the county auditor. The information contained on this record, in conjunction with the actual viewing of the property by the appraiser and other pertinent information available, shall be used in estimating the true value in money of each parcel of real property in the county. Each such card or sheet shall provide, insofar as possible, the following information:"

(See Rule for itemization required.)

"BTA-5-10 (Rule 109). *Procedure after Reappraisal.*
"* * * The county auditor shall not lay before the county board of revision the returns of his assessment of real property for the current year in accordance with the provisions of R. C. 5715.16, nor the abstract required to be filed with the board of tax appeals under the provisions of R. C. 5715.23 and 5715.24, until and unless the record cards or sheets required by Rule BTA-5-04 for each and every parcel are in his possession and open to the inspection of any interested person."

The county auditor under R. C. 5715.16 is required to "lay before" the board the returns of his assessments and which board "shall forthwith proceed to revise the assessment and returns of such real property." However, the detailed information as to "each and every parcel" must be "in his possession" and open to inspection of any interested person before doing so in order that the board may have available to it, but in the possession of the auditor, detailed information which it may use to assist in the performance of its duties of revision and equalization.

He is the secretary of the board of revision and charged with keeping its records and performing such other duties as are incidental to the position of secretary.

The Legislature being aware of the multitude of various involved records that make up the tax records of a county and of the necessity of their being readily available for use by the board has specified that the county auditor who has possession and control of the permanent records

be the secretary of the board of revision, obviously to facilitate the production of such records when needed without interference with his other work.

To review, in chronological order, work of the auditor as related to the work of the board, we find:

Under R. C. 5715.16, he shall lay before the board the returns of his assessments; after the board has completed its work of equalization and transmitted the returns to the auditor he shall give notice that complaints against any valuation or assessment will be heard by the board, a complaint may be timely filed by any taxpayer with (R. C. 5715.19) the auditor and "he shall present to the * * * board * * * all complaints filed with him"; every complainant or taxpayer shall be notified of the filing and when a decision is rendered the board shall certify its action by registered mail to * * * the property owner and * * * the complainant.

What is a secretary? What are his duties in the premises?

Since a dictionary of the English language was first composed by Nathaniel Bailey, and his works were expanded and supplemented by Dr. Samuel Johnson and Noah Webster, the definitions given by lexicographers have been utilized by courts in construing and interpreting statutes. Webster's New World Dictionary defines "secretary" as follows:

"1. A person employed to keep records, take care of correspondence and other writing tasks, etc., for an organization or individual.

"2. A general official in overall charge of such work.

"3. An official in charge of a department of government."

Other courts have discussed the meaning of the words "secretary" and "clerk" as applied to public officials. *State* v. *Currie*, 55 N. W. (N. D.), reads as follows, at page 860:

"* * * The terms 'clerk' and 'secretary,' as applied to subordinate ministerial functionaries, are, by popular usage, synonymous terms, and are frequently used inter-

changeably. This use is also strictly accurate, according to the accepted standards of the language. One definition of the term 'secretary,' as given in Webster's Dictionary, is: 'A person employed to write orders, letters, dispatches, public or private papers, and the like; an official scribe, amanuensis, or writer.' The same authority, under the word 'clerk,' says: 'In some cases, "clerk" is synonymous with "secretary";' also, that a clerk is 'one who is employed to keep records and accounts; a scribe; a penman; an accountant; as the clerk of the court.' A striking, as well as strictly pertinent, example of the interchangeable use of the terms 'clerk' and 'secretary,' is found in the law we are considering. As we have seen, Section 6, c. 126 LAWS 1885, expressly authorized the board to appoint a secretary. A salary was provided for such secretary. But a careful perusal of the entire chapter will disclose the fact that not a single duty, clerical or otherwise, was devolved by the act upon any official of that name, while, on the contrary, one duty, at least, of a clerical nature was expressly cast upon a subordinate of the board, who was, in terms, denominated a 'clerk'; and no officer called a 'clerk' was authorized to be appointed or employed, by the territorial statute. * * *''

In *Mercer v. Down et al.*, 43 N. E. 2d 452, the Court of Appeals of the state of New York was called upon to determine whether Mr. Mercer as Executive Secretary of Commissioners of Allegheny State Park was in an exempt class of the state civil service. The observations of the court with reference to the title of a position are of interest. The court said at page 454:

''We think the respondents' argument disregards the duties assigned to the appellant as executive secretary. It is not the title which the position bears but the character of duties required of its incumbent which must control our decision. 'The Legislature did not intend that rights of tenure to a position in [civil service] should be determined by the name given to the position. *The duties* of the position, as defined by some statute or by an ordinance or resolution of a body duly authorized by statute, *not its name,*

*determine the status of the position.'* (Emphasis [theirs] supplied) *Matter of Rohr* v. *Kenngott*, 288 N. Y. 97, 105, 41 N. E. 2d 905; *Matter of Byrnes* v. *Windels, supra*, 265 N. Y. pp. 406, 407, 193 N. E. 248.''

In *Jones* v. *Commissioners*, 1 Ohio C. C. Dec. 152, the question was presented as to whether the county auditor, who by virtue of his office, was secretary of the board of county commissioners, was entitled to compensation additional to that he received as county auditor, when he performed clerical work for the commissioners. It was contended that the performance of clerical work necessary to prepare an annual report was not within the contemplation of his work as ''secretary.'' The court held that the work of ''secretary'' included the doing of the clerical work and that the auditor was not entitled to additional compensation therefor. At pages 152 and 153, syllabuses 1 and 2 read as follows:

''1. Preparation of Commissioners Report by Auditor.

''A county auditor, by virtue of his office, is secretary of the board of county commissioners, and as such, may be required to perform the clerical work necessary to prepare their annual report.

''2. Auditor Not Entitled to Compensation.

''The word 'secretary,' as used in Section 1021 of the Revised Statutes, is synonymous with the term 'clerk,' as used in Sections 850 and 1078, and hence the auditor cannot charge or receive any compensation for making out such annual report, other than his compensation as expressed in the statute.''

At pages 153 and 154, the court stated:

''It is argued here, with some ingenuity, I confess, that certain statutes prescribe that the auditor shall act as *secretary* of the board of commissioners, and that where that language is used the powers and duties conferred upon the auditor are different, and impliedly broader, than they would be if he were to act as *clerk*—which is the word used in certain other statutes. The nicety of that reasoning is impaired somewhat by the fact that the word 'clerk' is used in the statutes relating to that officer, whether he be clerk

or secretary of the board of commissioners, in the chapter relating to county commissioners, to-wit: Section 850, which provides that the clerk shall perform certain duties; and the *word 'secretary'* is used in the chapter relating to the duties of the county auditor; and it is clear from the reading of these statutes, that the duties required of the county auditor—who in one chapter is described as a *clerk* and in the other as *secretary*, are the same, whether he fills one position or both, and they are therefore used by the Legislature in this chapter as synonymous terms—describing the same officer. Section 850 provides that 'the clerk shall keep a full and complete record of the proceedings of the board, and a general index thereof, in a suitable book provided for that purpose,' and the section goes forward and prescribes fully and completely the duties of the clerk. It does not say who he shall be. * * *''

(The similarity of the words used in R. C. 5715.09 should be noted.

"He shall * * * keep an accurate record of the proceedings of the board in a book kept for the purpose, and perform such other duties as are incidental to the position.")

The Legislature, subsequent to the *Jones* decision in 1896, amended the statute so as to provide for additional compensation to the county auditor for some clerical work for the commissioners. However, a subsequent decision reaffirms the holding that the word "secretary" as used in Section 1021, Revised Statutes, is synonymous with the word "clerk" as used in Section 850, Revised Statutes. (*State* v. *Godfrey*, 13 Ohio Dec. at page 540.)

The applicable statutes became effective substantially in their present form in 1917. (107 Ohio Law .) Since that time the office operations of the board have been administered by the county auditor through his personnel.

Membership of each hearing board (R. C. 5715.02), is made up of three persons, one being a qualified employee from the office of the county auditor, one from the office of the county treasurer, and one from the office of the president of the board of county commissioners.

Over a continuous period covering about 54 years,

Auditors John A. Zangerle, John J. Carney and Ralph J. Perk, and Treasurers John J. Boyle, Leslie Monroe and Frank M. Brennan construed and applied the statutory duties of the auditors in the manner the plaintiff herein contends was contemplated by the Legislature. The Cuyahoga County Board of County Commissioners has been rotating its presidency amongst its members over the years. Practically every commissioner has therefore been a member of the board of revision at some time. It is obvious that from 1917 to 1971 the county commissioners have at least concurred in the construction and application of the statutes in the manner that is now contended by the plaintiff herein as being that which was intended by the Legislature. Also, the board of county commissioners for the year 1971 have included the operations of the board of revision in the budget allocated to the county auditor.

The Department of Taxation and the Board of Tax Appeals of the state of Ohio also have obviously concurred over many years in such construction and application of the statutes.

It is stated in the brief of the plaintiff that every other county in Ohio except Cuyahoga County still follows the procedure asserted by the plaintiff herein as being that which is in accordance with the cited statutes. This statement is disputed by the defendants. The court may, of course, take judicial notice of such matters in determining the issues presented herein.

It is true, as contended by the defendants herein, that an illegal procedure does not become legal merely because it has been followed for a long period of time. If prevailing administrative practices are clearly contrary to the spirit and purpose of the law, the court must disregard them entirely.

The law also holds that the construction given by persons charged with the execution and application of a statute is entitled to great respect by the courts and when the construction of a statute may be doubtful, uniform rulings of an executive office have been allowed to turn the scale.

"In interpreting a statute, it is a well-settled rule that

a resort may, under proper circumstances, be had to the construction given thereto by those charged with its execution and application, especially where it has long prevailed. Judicial notice may be taken of such constructions for such purpose. The construction placed upon a statute by executive departments or bureaus is not only persuasive, but is entitled to great respect and great weight, and is not to be disregarded or set aside unless judicial construction makes it imperative to do so. Perhaps it should be regarded as decisive in a doubtful case or where the obligation imposed or the duty enjoined is not plain and specific.'' 50 O. Jur. 2d 253-254, *Statutes*, Section 268.

*State* v. *Currie*, 55 N. W. (N. D.), reads as follows at page 861:

''While it is true that the relator is not necessarily concluded by the uniform rulings of the several state auditors who have practically construed the law against the relator's theory, nor by the uniform acquiescence of his predecessors in office in such rulings, nevertheless it is true that the ruling of an executive officer upon a point where it is his sworn duty to act, especially where the rulings have been acquiesced in by those whose financial interests were involved, are always given considerable weight in the courts, and when the power is doubtful the uniform rulings in an executive office would be followed, and allowed to turn the scale. Cooley, Const. Lim. (3d Ed.) marg. pages 69, 70. * * *''

It would appear to be the current position of the defendants that the law should be construed and applied differently because of the number of complaints recently filed. The law applies uniformly to every county and to every auditor and every board of revision in the state of Ohio and regardless of the number of complaints filed in a particular year.

The provisions of other statutes relating to the board are significant in deciding whether or not the Legislature intended that the county auditor should or should not do the secretarial work of the board when it mandated, in R. C. 5715.09, that he is secretary of the board and shall

keep an accurate record of the proceedings and perform such other duties as are incidental to the position of secretary.

(a) In R. C. 5715.03, the Legislature provided that incidental expenses "including postage and express charges" of the auditor as well as the board should be allowed. It would seem that the auditor was expected to do writing and mailing in addition to keeping the records.

(b) While the commissioners are required to furnish office rooms (R. C. 5715.05) to the board of revision, they *do not* furnish maps, plats, stationery, blank forms, books, supplies, furniture, and other equipment directly to the board but "they shall furnish [such items] to the county auditor for *his own office* and the county board of revision * * *." (Emphasis added.)

(c) "The secretary of the board shall preserve *in his office* [office of the county auditor] separate records of all minutes and documentary evidence offered on each complaint." (Emphasis added.) (R. C. 5715.08.) The law intends that the auditor shall prepare, and preserve in his office, as part of the permanent tax records of the county a separate permanent record as to each complaint. The law *does not intend* that two separate records be preserved, one by the board and one by the auditor. The auditor prepares and preserves all records but the proceedings as to each complaint are indexed and preserved separately.

(d) The auditor is required to keep his office open during all business hours throughout the year. This is in order that all tax records, including those used in the proceedings of the board of revision, will always be available for use and public inspection (R. C. 5715.07), and that complaints may be seasonably filed—even when the board offices are not open.

(e) The board of revision is only required to keep its offices open "during the time fixed for their sessions." (R. C. 5715.04.)

(f) Complaints are filed with the auditor (R. C. 5715.-19) who necessarily performs all functions in connection with such filings. Although two or more members may call

a meeting of the board, the auditor is charged in the first instance with the duty of doing so because only he can know what number of complaints are on file, which have been indexed, and whether the necessary pertinent permanent tax records (BTA Rules 103 and 104) are available for board use.

(g) The requirement of R. C. 5715.19 that "The county auditor shall present to the county board of revision all complaints filed with him," contemplates more than the handing over of the form that has been executed by the taxpayer, but requires extensive secretary-office type work by the auditor-secretary.

(h) Where, under R. C. 5715.16, the county auditor is required to "lay before the * * * board * * * the returns of his assessment * * * and such board shall forthwith proceed to revise the assessment," it also contemplates the doing of extensive office type work by the auditor-secretary in preparation thereof.

(i) It is not contemplated that the auditor personally will perform all the detailed work required of him as secretary of the board but that he will be assisted by his deputies. (*R. C. 319.05.*) "The county auditor may appoint one or more deputies to aid him in the performance of his duties." (R. C. 306(A).) "A deputy, when duly qualified, may perform any duties of his principal."

(See 1934 O. A. G. 3605; 1960 O. A. G. 559; and also *State, ex rel. Green,* v. *Edmonson,* 12 Ohio N. P. (n. s.) 577, 23 Ohio N. P. 90.)

The record herein indicates that at the present time five typists are required to type the records of the proceedings before the board into the permanent record book. Approximately five other persons take care of the balance of the secretarial work.

While the word "clerk" is in the cited statutes and also in the order of the board of tax appeals, there is nothing contained in any statutes specifying duties to be performed by clerks and any other employees.

The statutes specifically and clearly assign all the office type work to the auditor as secretary of the board.

The reference to clerks or the hiring of clerks in R. C. 5715.03, 5715.04 and 5715.06 and the order of the board of tax appeals is redundant. The Legislature did not intend that any persons other than the members of the staff of the county auditor, that is, deputy county auditors, should do any office type work for the board.

*Deering* v. *Hersch*, 146 Ohio St. 288, at page 295, states: "Certainly the law does not require the employment of help not needed."

This is not to say that the board cannot hire any persons. The board certainly can hire experts. An "expert" is defined as a person who is very skillful or highly trained and informed in some special field.

It is understandable that the board of revision would find it very helpful to hire a real estate expert or an engineer or an architect to assist it in matters of valuations, etc. This is the type of expert that is contemplated in the applicable statutes when an "expert" is mentioned.

After a complete review of all matters pertinent to the issues here presented, the court finds nothing that would indicate otherwise than that the duties of the auditor as secretary are "to keep records, take care of correspondence and other writing tasks, etc., for an organization or individual" and to be the "general official in overall charge of such work" and workers.

Thus does Webster define "secretary" and describe the duties and status of the position. Reason, common sense, precedent and every available legal authority conclusively contribute to establish that the Legislature intended that the auditor-secretary's status, responsibility and duties, in the premises, are generally such as are described by Webster.

The court has determined that the auditor who is secretary of the board is the individual who has the sole authority to hire, designate, assign and supervise the persons who do all the office type work in connection with the board of revision.

Common sense dictates that there is no reason why another official or body either hire or designate others to do

work which is already specified as that of the auditor-secretary. Common sense also dictates that there should not be divided authority as to the supervision of the "office work" of the board.

*Conclusion*

The answer to Question No. 1, page 5 hereof, is "Yes."

The answer to Question No. 2, page 5 hereof, is "No."

The answer to Question No. 3, page 6 hereof, is "No."

The duties of the county auditor as secretary of the board of revision can be likened to those that the clerk of court performs for the Common Pleas Court.

It has been indicated that detailed findings are expected of the court with respect to the processing of complaints.

The *Cuyahoga County Auditor*, as a part of the duties and functions of the office to which he was elected, shall either personally or by deputy county auditors:

1. Accept and file each complaint.

2. Number it.

3. Index it.

4. Prepare a file for each complaint, including therewith such portions or copies of such portions of the permanent tax records of Cuyahoga County that have heretofore usually been made available to a hearing board as to each complaint.

5. Prepare a calendar of cases to be heard by each hearing board, and subject to the convenience of the members of the respective boards, schedule the hearings thereof.

6. Prepare and execute, sign and mail all required notices with reference to any complaint or the hearings thereon.

7. Present the complaint and file to the hearing board.

8. Prepare and execute any subpoenas requested in writing by any board member or anyone entitled to participate in any hearing.

9. Produce upon reasonable request of any member of the board of revision or of any member of a hearing board any tax record in the possession or under the control of the county auditor.

10. Record all proceedings of each hearing board and

of the board of revision itself and insert and preserve such records in the permanent record book that has been heretofore used for such purposes.

11. Present for signature and approval of the respective board the record or minutes of its proceedings.

12. Preserve the file of each complaint except during the time when it is submitted to a hearing board for proceedings by such board.

13. Prepare, execute, sign and mail to the proper persons copies of each board decision.

14. Prepare and forward the necessary documents required in appeals to the Board of Tax Appeals of the Common Pleas Court and make any required certification thereof.

15. Provide all available information reasonably requested of the board or the secretary, by anyone, with reference to a complaint.

16. Generally do, direct and supervise the doing of each and every act usually done in well-conducted business offices by way of answering telephones, providing stenographic, typing, filing, receptionist and messenger services for the board and the members of each hearing board.

17. Do and perform any other act indicated in this opinion but not specifically herein set out, and every other act and deed performed prior to April 21, 1971, by the county auditor as secretary of the board of revision.

*Each board hearing complaints* shall review each complaint submitted to it, receive and consider all evidence it deems material, render its decision thereon and certify its decision to the auditor.

The court's research of the law has included a review of the excellent opinion of Judge J. Gareth Hitchcock of Paulding County, Ohio, in the Hancock County Common Pleas Court Case No. 35486, *Dale R. Zeisloft et al.* v. *Board of Revision of Hancock County et al.* (as yet unreported). Included in this opinion is a quotation from Horace Walpole, a noted writer and the son of Sir Robert Walpole, the first Englishman to be given the title of Prime Minister. In about 1703, Mr. Walpole wrote:

"It is safer to tax real than personal estate because

landed gentlemen are like the flocks upon their plains who suffer themselves to be shorn without resistance; whereas the trader part of the nation resemble the board, who will not suffer a bristle to be pluckt from his back without making the whole parish to excho with his complaints."

48,000 complaints as to land taxes were filed in Cuyahoga County during the last filing period. Considering that fact and also the fate of many tax levies it would appear that landowners, no more than men of commerce or industry, will placidly accept any additional land tax burdens, let alone suffer themselves to be shorn without resistance.

Each person who filed a complaint is entitled to have his complaint promptly and fairly decided. This settlement of this "jurisdictional dispute" between the elected Cuyahoga County officials should assist in that result being achieved. We are confident that all parties hereto will cooperate to that end.

*Judgment for plaintiff.*